Stagg *agt.* Jackson and wife.

*Not reported.*

--- ◄•●•► ---

STAGG, ex'r, &c., appellant, *agt.* JACKSON & WIFE, respondents.

*Questions discussed.*

1. Whether a *surrogate* has jurisdiction, under the statute, (2 *R. S.* 110, § 57,) to call an executor to an *account* for the *rents, issues*, and *profits* of the *real estate*, where the same was sold not in pursuance of an order, but by directions in the will which devised the real estate to him upon trust, to sell whenever he should see fit?

2. Whether such accounting by the executor should be as *executor* under the statute, or as *trustee in equity?*

3. Whether by the *devise* of the real estate to the executor, and by the whole provisions of the will, the real and personal property was blended in one com- mon fund, which amounted to a *conversion* of the real estate into *personalty at the death of the testator*, upon the doctrine of *equitable conversion?*

Abraham Stagg, by his last will and testament, did devise and bequeath as follows:—

*Item.* I give, devise, and bequeath all my estate, real and personal, to my executors hereafter named, their heirs, execu- tors, administrators, and assigns, as joint tenants, and not as tenants in common forever, upon the trusts and for the purposes hereinafter mentioned and declared, that is to say, in trust whenever they shall see fit to sell all or any part of the said trust estate to such person or persons, and upon such terms,

36

for cash or on credit, or both, as to them shall seem most prudent, and to execute good and sufficient conveyances therefor to the purchaser or purchasers in fee, or for any less estate: and I hereby declare that any such purchaser or purchasers shall not be bound to see to the application of the purchase money, but that the receipt of the said trustees for the purchase money shall be a sufficient discharge for the same.

*Item.* I also authorize the said trustees, from time to time, to lease and demise any part or parts of the said trust estate for a life or lives, or for years, for such rents, and on such conditions as they shall see fit.

*Item.* I also authorize the said trustees to invest all moneys to arise from the sale of any part of the said trust estate, or from the rents and profits thereof, and also all the real and personal estate bequeathed to them as aforesaid, and the interest and dividend thereof, in bonds secured by mortgages on real estate, or in the stock of the United States, or of any one of the said states, or of the corporation of the city of New-York, or of the bank of the United States, or of any incorporated bank in the state of New-York, and to change such investment as often as they shall see fit.

*Item.* I have already advanced for my daughter Anna Matilda, wife of Justus Earle, the sum of one hundred and twenty dollars, and for my daughter Hannah Augusta, wife of Samuel T. Gautier, the sum of one hundred and twenty dollars; and I direct that in distribution of the said trust estate, those sums shall be considered as parts thereof, and charged against the shares of my last named two daughters respectively.

*Item.* I direct the said trustees to pay out of the said trust estate the sum of fifty dollars yearly, toward the education and maintenance of my daughter Helena, until she attains the age of fifteen years over and above her share of the said trust estate, and the income thereof; and also to pay the like sum of fifty dollars, yearly, toward the education and maintenance of my son Junius Theodore, until he attains the age of fifteen years, over and above his share of the said trust estate and the income thereof.

*Item.* Subject to the above directions, I order the said trustees to divide the said trust estate, and the proceeds and income thereof, into nine equal parts, and to pay over and convey one part to my said daughter Anna Matilda and her heirs; one other part to my daughter Mary Elizabeth and her heirs; one other part to my son John Town and his heirs: and I direct the said trustees to hold one other part as the share of my daughter Hannah Augusta, upon the trusts hereinafter mentioned relating to the same; and I further direct the said trustees to hold one of the said parts for each of my five minor children, Abraham, Benjamin, Charles, Frederick, Helena, and Junius Theodore, respectively, on the trusts hereinafter mentioned concerning the same.

*Item.* As to the shares of my five younger children, I direct the said trustees to hold each of the said shares respectively, until the child for whom it is held shall arrive at lawful age, and then to pay over and convey the same to such child, his or her heirs and assigns; and during the minority of such child, to pay so much of the income of said share for the maintenance and education of such child as they shall think fit and proper; and in case either of my said younger children shall die after me, under age, and without leaving lawful issue, him or her surviving, then the share of him or her so dying shall go to, and be divided among, and considered as part of the shares of my surviving children, and the child or children of such of my children as shall then be dead; the child or children of a deceased child of mine taking the part which his or her, or their parent, if living, would be entitled to.

*Item.* I authorize the said trustees to make partition of my lands or estate, wherein I shall be at the time of my decease interested as tenant in common, and also to compound and compromise any claims, debts, or sums of money which may be due on my estate, and to accept in satisfaction thereof such partial payments, property, security, or assurances for payments as they shall think discreet; and also to submit to arbitration or umpirage any dispute or difference which may arise between them and others, concerning any demand made by or

against them as executors, or as trustees or devisees as afore-said.

*Item.* Samuel T. Gautier, by a certain deed of assignment, bearing date the twenty-eighth day of July, in the year one thousand eight hundred and twenty-eight, and recorded in the office of the register in and for the city and county of New-York, in lib. 239 of conveyances, page 336, did convey to me, and my heirs and assigns, an undivided third part of certain lands and premises, subject to the life estate of Elizabeth Gautier therein, and also subject to the payment of certain quit rent, and upon certain trusts in the said deed mentioned : and the said Samuel T. Gautier, by a certain other instrument, bearing date on the ninth day of March, in the year one thousand eight hundred and twenty-nine, did authorize me to reimburse myself certain moneys out of the surplus proceeds of the said premises, as by the said deed of assignment and other instrument may appear.   Now I do hereby devise to my executors, and to their heirs and assigns, as joint tenants, and not as tenants in common, all my estate and interest in the said lands and premises, legal as well as equitable.

*Item.* I nominate and appoint my brother Benjamin Stagg, and my son John Town Stagg, executors and trustees of this will.

*Item.* If only one of my executors should survive me, or if only one of them should prove this will and take on himself the execution thereof, then, and in either of these cases, I give and devise to the executor who shall take on himself the execution of this will, and to his heirs and assigns, the same estate, real and personal, which I have above devised to my executors, and with the powers and on the same trusts.

John T. Stagg, in June, 1835, took upon himself the burden of the execution of the will.   James Jackson and Mary E. his wife—the latter being the daughter, devisee, legatee, and one of the heirs at law of the testator—filed their petition before David B. Ogden, Esq., surrogate of the city and county of New-York, praying that the said John T. Stagg might be compelled to account with and pay over to the different parties in interest the shares due to each from the said estate.

On the 27th of July, 1843, the surrogate made an order that the executor render his account on or before the 20th of August next, (1843,) and that the hearing thereon be adjourned to the first Tuesday of September, 1843.

The executor rendered and filed his account, under oath, of the *personal estate* only, showing a balance in his hands of $2,835.75. The respondents, Jackson and wife, excepted to the account, and charged that no vouchers were produced for the debits and credits in the account, so that the correctness thereof could be admitted or objected to ; and that the following items were objected to as improper, (naming some twelve different items amounting to about $250.) That no interest was allowed in said account to the estate. That the testator, at the time of his death, was seized of the moiety of the stores Nos. 185 and 187 Washington-street, in the city of New-York; and that the rents accruing from the same were not credited in the said account : that the interest of said testator in said stores was, after his death, sold as directed by the last will and testament of the testator, and that the proceeds of the sale were not accounted for in said account rendered.

That the other real estate, of which the testator died seized, had been sold as directed by said will, but that the proceeds had not been accounted for by said executor.

The answer of John T. Stagg, the executor, averred that the account he had rendered was just and true, and that he was ready to verify the same, and to substantiate by proofs and vouchers the items in said account, according to law.

And further, that no interest was due to said Jackson and wife from the executor, because he had already paid them, before the citation issued, an amount far exceeding the share or proportion due to the wife, Mary E. Jackson, from the personal estate of the testator.

And denied the right, at law, claimed by the respondents, to have or demand any amount of the rents, issues, and profits, or the avails of the real estate sold, whereof the testator died seized, and demurred to such claims and demands, as in said account of said James Jackson and Mary E., his wife, required,

because, he said, they were not within the jurisdiction of the surrogate's court, nor could the settlement thereof be legally adjudicated before said surrogate.

To this answer and demurrer the respondents filed a replication and joinder.

The surrogate, after argument of the cause on the 24th Nov., 1843, overruled the demurrer of John T. Stagg, the executor, and ordered that he proceed with the further accounting, and that he produce the vouchers for the debts and credits in his account before rendered, exhibiting the particulars thereof; and that he account for the rents and profits of the real estate of which the testator died seized, as well as for the proceeds realized from the sale of the said real estate, after the decease of the testator, and that he file said account, duly verified, with the vouchers, in the surrogate's office on or before 15th Dec., 1843; and that the executor submit himself to an examination on oath touching any property or effects of the deceased which had come to his hands, and the disposition thereof, or in default of compliance with the order, an attachment issue against said executor. The question of the liability of the executor to allow interest on the property and effects which had come to his hands was reserved until further accounting was had.

John T. Stagg, the executor, appealed from the whole of this decree, except that part relating to the personal estate, which would and ought to be included in the inventory of the personal estate of the testator by his acting executor to the chancellor.

On the 23d of February, 1847, the chancellor affirmed the decree of the surrogate, appealed from, with costs to be paid by the executor; and decreed that the respondents, by reason of said appeal, as and for damages for the delay and vexation thereof, recover against the appellant interest on the balance which was due them from the appellant as executor on the 23d Dec., 1843, including in such balance such interest as the respondents were then entitled to upon their share of the funds in the hands of the appellant, from the time when he ought to have paid it over to them, or invested it for their use; and that

for the purpose of ascertaining and giving to the respondents such damages, the surrogate of the city of New-York, to whom the proceedings were to be remitted, was directed to state the account of said appellant, with a rest on the said 23d day of December, 1843, and to charge the appellant, executor as aforesaid, with interest from that time upon the balance which was then due from him to the respondents for the principal and interest, with which the appellant was then chargeable for the share of the proceeds of the real estate of the decedent, Abraham Stagg, and of the rents, interest, and income thereof.

From the decree of the chancellor, John T. Stagg, the executor, brought an appeal to this court.

*Silvanus Miller, Attorney, and*
*Henry E. Davies, Counsel,* for appellant.

*First.* The surrogate's court, by its original constitution, have no concern with, nor jurisdiction over, real estate.

*Second.* Whatever jurisdiction over real property it at present possesses is derived exclusively from statutory enactments, which, being in derogation of the common law courts, must be strictly construed. (*Dakin* v. *Hudson*, 6 *Cowen*, 221; *Bloom* v. *Burdick*, 1 *Hill*, 139; 4 *T. R.* 107.)

*Third.* If the surrogate's court has any jurisdiction over the subject matter of this suit, it is derived from the following clause of the revised statutes, viz. :—

" When by any last will, a sale of real estate shall be ordered to be made, either for the payment of debts or legacies, the surrogate, in whose office such will was proved, shall have power to cite the executors in such will named, to account for the proceeds of the sales, and to compel distribution thereof; and to make all necessary orders and decrees thereon, with the like power of enforcing them, as if the said proceeds had been originally personal property of the deceased in the hands of an administrator." (2 *Rev. Statutes, p.* 110, § 57.)

☞ Will don't *order* estate sold—only gives power. This is a *devise*, not a *legacy*. *Godolphin*, part 3, ch. 1, § 1; *Wil-*

*liams's Executors*, 771.—Trustee has discretion—executor has not.

*Fourth.* The will of Abraham Stagg devises—

1. The real estate to his executors upon trust, to sell all or any part of the trust estate, whenever they shall see fit—thus leaving the selling of the real estate entirely at the option of the executors.

2. It authorizes the trustees to lease and demise any part of the trust estate, for life, or lives, or for years.

3. Then after two small annuities, the will directs the division of the trust estate into nine parts; and the payment or conveyance of one part to testator's daughter, Anna Matilda; one other part to a daughter, Mary Elizabeth; one other part to a son, John; and the holding of another part in trust for a daughter, Hannah Augusta, upon certain trusts; and the five remaining shares to be held for the five minor children of testator respectively, subject to contingencies, and going over to other persons, on the happening of certain events.

*Fifth.* It must be observed that, under this will, there are two devises of the real estate, viz. :—

1. It is optional with the executors whether to sell or not; and if they do not sell, or until they do sell, the *rents and profits* are to be received and passed over to certain persons. This is a clear *devise*, and not a legacy.

It is not an "incident" to the direction, because it is not connected with the direction, nor necessary for its execution; but is entirely independent of it, neither advancing, nor retarding, nor aiding, nor in any way qualifying the sale.

It is entirely optional with the executors whether they will sell or not. They may never sell. This provision, so far from being an incident to the direction to sell, is made as a substitute, in case the direction is never followed, or during such indefinite time as it shall remain unexecuted.

The appellant demurs specially on the ground that the surrogate has no jurisdiction to call him to account for the rents, issues, and profits of the real estate. (*Vide demurrer case, p.* 17.) And the surrogate by his decree orders him to account for those

rents and profits, (*case*, *p.* 7,) and such order is confirmed by the chancellor's decree, (*case*, *p.* 28.)

If this is a devise, then the surrogate has no jurisdiction, and the two decrees are clearly erroneous.

2. As to the proceeds of the sale, the executor was not liable to account before the surrogate.

(1.) In this case the lands are not ordered to be sold, as is the case in which the statute gives the surrogate jurisdiction.

The will creates a trust, leaving it to the trustee to sell or not as he shall deem best. He is liable to be called to account in equity as a trustee, but the land is certainly not *ordered to be* sold.

(2.) The executor may, if he chooses, divide the real estate, giving to each of the final devisees a ninth part, and accounting to each for a ninth part of the rents and profits, certain parts being contingent, and to be retained by said executors till the contingency occurs; or he may, if he chooses, sell the estate, and make a similar division and appropriation of the proceeds : all this shows a case of trustee and *cestui que trust*, and a case in which the executor will be held accountable in equity. But it is submitted that it does not show a case coming within the 57th section of the revised statutes, quoted above.

*Sixth.* The chancellor's decree ordering compound interest to be paid, by directing a rest to be made on the 23d December, 1843, ought to be reversed, as the appeal was for reasonable cause, and the case is not one in which damages should be awarded for delay and vexation.

☞ Act of 1837 confers no authority to *compel* the bringing the money into court. ☜

*Woodruff & Goodman, Attorneys, and*
*L. B. Woodruff, Counsel,* for respondents.

*First.* By the provisions of his will the entire property of the testator, real and personal, was blended in one common fund—real estate to be converted into money, and the whole, together with the income thereof, to be applied to the payment of debts and legacies, and be divided among his children.

1. This amounted to a conversion of the real estate into personalty *at the death of the testator,* upon the doctrine of equitable conversion.

2. This would be true, even if there had been no devise of the legal estate, but only a power to sell, &c., to pay debts and legacies, &c. (*Ram on Assets, p.* 139, [205,] *and cases cited ; 2 Pow. on Dev. p.* 60, *and onward ; Leigh & Dalzell on Eq. Conversion,* 5 *Law Library,* 1*st series ; Marsh* v. *Wheeler,* 2 *Edw. Ch. R.* 157 ; *Lorillard* v. *Coster,* 5 *Paige,* 218 ; *Bunce* v. *Vandergrift,* 8 *Paige,* 37.)

*Second.* In accordance with the above principles, which apply in equity to the whole estate *before* it is actually converted into money, the rents and profits, *when collected,* and the *proceeds* of sales actually made, are legal assets in the hands of the executor.

1. The powers conferred by the will appertain to John T. Stagg, in his representative character, *i. e.* as executor.

2. And upon the principle that whatever goes to the executor *as executor* is legal assets, both the income before a sale and the proceeds after sale are deemed legal assets in his hands. (1 *Cruise,* 61 ; 1 *Atk.* 484 ; 1 *P. Wms.* 430 ; *Hard.* 405, 133 ; 1 *Vern.* 63 ; 2 *Vern.* 106, 248, 405 ; *Prec. Ch.* 127, 136 ; *Stagg, exr.,* v. *Celle et al V. Chan. of* 1*st Circuit, Jan.* 23, 1843 ; *Deg* v. *Deg,* 2 *P. Wm.* 415 ; *Dethicke* v. *Caravan,* 1 *Lev.* 224.)

☞ Some of the late English cases have called these cases into doubt, for the purpose of upholding the exclusive jurisdiction of the court of chancery. ☜

*Third.* The interest of the respondents (in right of Mrs. Jackson, the daughter of the testator) is that of legatee, entitled to an immediate division of the estate. And the trusts created for the protection of the minor children and grandchildren of the testator do not impair the respondents' right to treat the moneys received by the executor as legal assets, received for their use.

*Fourth.* Real estate, when *converted* into money for the payment of debts and legacies and distribution, is not only legal

Stagg *agt.* Jackson and wife.

and personal assets in the hands of the executor, but is to be accounted for before the surrogate.

1. The statute is explicit in regard to proceeds of sales.

2. There is no foundation for any distinction between the rents *collected* before the sale and the money received on the sale; both are the result of the conversion contemplated by the will.

3. The accounting must therefore be *as executor.* (2 *Rev. Stat. p.* 24, [82,] § 6; *do. p.* 47, [109, 110,] §§ 55, 57, 61; *do. p.* 32, [92,] §§ 52, 53; *do. p.* 30, [90,] §§ 45, 48; *do. p.* 52, [116,] §§ 18, 19; *Bogert* v. *Hertell,* 4 *Hill,* 492; *Toller on Exrs. p.* 413, *and onward ; Sess. Laws,* 1837, *ch.* 460, *p.* 537.)

*Fifth.* The order appealed from is not erroneous.

1. The appeal should be dismissed, with costs to be paid by the executor *personally*, and not of the estate.

2. Damages should be awarded to the respondents for the delay and vexation caused by the appeal from the court of chancery.

There is nothing meritorious in the objections by the executor to the order appealed from.    The nature of these objections—the previous decision of the court of chancery upon the appellant's own application in regard to this estate, acquiesced in by him, and the lapse of *twelve* years, during which the executor has held this estate in his own hands—all show that this appeal is taken for the mere purpose of vexation and delay, while the executor retains the money for his private use and benefit. (2 *Rev. Stat. p.* 513, [618,] § 36, [§ 35;] *Boyd* v. *Brisban,* 11 *Wend.* 529.)

DECISION.—*Decree affirmed, with costs, to be paid by appellant.* BRONSON, JONES and WRIGHT, JJ., *were for costs to be paid out of the fund.*

NOTE.—JEWETT, Ch. J., delivered the opinion of the court. *Held,* that independent of the statute (2 *R. S.* 110, § 57) and the provisions of § 75 of the statute of 1837, ch. 460, the surrogate's court had the jurisdiction claimed by it.

That by the provisions of the will it was manifest that the testator intended that his whole estate, real and personal, together with the rents, profits, and income, intermediate the sale should become united in one common money fund

for the sole purpose of division and distribution among the objects of his bounty; and upon the principle of equitable conversion, the real estate was converted, by the devise and discretion to sell into personalty, from the death of the testator; the money arising from the sale thereof became legal assets in the hands of the executor, when received by him, and for which, as executor, he was bound to account as personal estate.

*Reported* 1 *Comstock,* 206.